Opinion issued December 18, 2003

 
 
 
 
 







     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00665-CV




HOUSTON R.E. INCOME PROPERTIES XV, LTD., Appellant

V.

WALLER COUNTY APPRAISAL DISTRICT, Appellee




On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2000-43709




O P I N I O N

          Appellant, Houston R.E. Income Properties XV, LTD. (Houston), appeals a
judgment in which the court below determined the market and appraised values of
Houston’s property to be $7,000,000 as of January 1, 2000, and $7,800,000 as of
January 1, 2001.
          In three points of error, Houston contends: (1) the trial court erred by
employing an improper method to determine the value of Houston’s property, (2) the
“income approach” is the preferred method in determining value under the
circumstances of this case, and (3) the trial court’s determination is not supported by
legally or factually sufficient evidence. We affirm.
I.       Background
          The property that is the subject of this dispute is identified in the Waller
County Appraisal District’s (the District) tax rolls as account number R122761.


 The
District appraised the value of the property at issue as of January 1, 2000 at
$8,022,180. Houston protested the appraisal, and the Fort Bend County Appraisal
Review Board determined the market value of the property to be $8,022,180 as of
January 1, 2000, and $8,194,760 as of January 1, 2001. Houston appealed the
Review Board’s determination, urging that the district court, pursuant to Section
42.25 of the Texas Tax Code, reduce the appraised value of the property.


 Both
parties presented expert witnesses. Chris Barzilla, the District’s expert, valued the
property at $7,782,785 as of January 1, 2000 using the cost approach and valued the
property at $8,028,000 as of January 1, 2001 using the income approach. Jack
Hughey, Houston’s expert, valued the property at $3,552,000 as of January 1, 2000,
and at approximately $4,500,000 as of January 1, 2001 by employing the income
approach.
A.      Method of Determining Value
          In its first issue, Houston complains that the trial court erred when it blended
two appraisal methods to arrive at its valuation.
          Houston contends the trial court’s judgment should be reversed because while
the two experts that testified at trial arrived at their valuations by employing the cost
and income approach methods, the trial court blended the income approach with the
market approach. Houston contends that neither of the experts relied upon the market
approach in arriving at their valuation. Houston bases its contention on the following
statement from the trial court:
Let me - - since you used cash flow for 2001, I’m going to look more
hard at cash flow than I probably would have otherwise. The thing that
makes the most sense from a non real estate, just sort of a guy-around-town sort of guy like me is what is a comparable per square foot sale. 
And that is the easiest - - the easiest thing to do. I’m going to do some
sort of blend between what the cash flow is versus what the square
footage is for what I think is probably a reasonable comparable value. 
And in the end my number will either be closer to what his is or what
yours is.

          Houston argues that the trial court was required to arrive at its appraisal based
upon either the market data, cost, or income approach to valuation.


 See Tex. Tax
Code Ann. § 23.0101 (Vernon 2001). It contends that the trial court erred by
employing “some sort of blend between” the income approach and the market sales
data approach. Relying on the Tax Code and City of Harlingen v. Estate of
Sharbonneau, 48 S.W.3d 177, 187 (Tex. 2001) (Baker, J. concurring), Houston
argues that the “Texas Supreme Court has recognized only these three appraisal
techniques as acceptable for determining market value” and that “mixing the methods
is a practice directly at odds with the widely used traditional methods of valuation
sanctioned by the Supreme Court.”
          It is well settled that the three usual approaches to determining market value
are the comparable sales, cost, and the income methods. Religious of the Sacred
Heart v. City of Houston, 836 S.W.2d 606, 615-17 & n. 14 (Tex. 1992). Although
these are the three usual approaches to determining market value, they are not
necessarily the exclusive methods by which market value may be determined. See
Sharbonneau, 48 S.W.3d at 186 (“It may be that in some cases involving
undeveloped land, expert opinions based on the subdivision development method
would be reliable, relevant, and admissible.”). The proper inquiry is whether the
appraisal method as a whole constitutes relevant and reliable evidence of market
value. Id. at 183.


 Contrary to the appraisal method employed in Sharbonneau, the
method Houston complains of on appeal is a true blend of two usual appraisal
methods.


 We hold that the appraisal method employed by the trial court produced
relevant and reliable evidence of market value.
          We overrule appellant’s first issue.
B.      The Income Approach
          In its second issue, Houston contends that the trial court erred when it
considered the District’s expert testimony and appraisal based upon the cost approach
to valuation for its appraisal of the property as of January 1, 2000. Rather, it argues
that the income approach should have been employed to determine the value of
Houston’s property, as opposed to the “amalgamated ‘blending’ method invented by
the trial court.”
1.       Waiver
          As a prerequisite for preserving a complaint for appellate review, the record
must show that the complaint was made to the trial court by a timely objection. Tex.
R. App. P. 33.1(a). An objection at trial not comporting with the complaint on appeal
presents nothing for appellate review. Scurlock Permian Corp. v. Brazos County, 869
S.W.2d 478, 484 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Houston
objected at trial to “predicate,” but failed to object that the cost approach was an
unreliable method for valuing Houston’s property as of January 1, 2000. We hold
that Houston waived this complaint on appeal, because its objection at trial failed to
comport with its complaint on appeal, and because Houston never objected to the
reliability of the cost approach method of valuation at trial.
          We overrule appellant’s second issue.
C.      Sufficiency of the Evidence
          In its third issue, appellant attacks the legal and factual sufficiency of the
evidence.
1.       Standard of Review
          In reviewing a legal insufficiency point, we consider only the evidence and
inferences that, when viewed in their most favorable light, tend to support the finding,
and disregard all evidence and inferences to the contrary. Havner v. E-Z Mart Stores,
Inc., 825 S.W.2d 456, 458 (Tex. 1992); Frost Nat. Bank f/k/a Nat. Bank of Commerce
v. Heafner, 12 S.W.3d 104, 109 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). 
If there is any evidence of probative force to support the finding, we uphold that
finding. Sherman v. First Nat’l Bank, 760 S.W.2d 240, 242 (Tex. 1988); Heafner, 12
S.W.3d at 109.
          In reviewing for factual sufficiency, we consider and weigh all of the evidence;
we will set aside the verdict only if the evidence is so weak or the finding so against
the great weight and preponderance of the evidence that it is clearly wrong and
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Heafner, 12 S.W.3d at 109. 
We may not substitute our opinion with that of the trier of fact. Heafner, 12 S.W.3d
at 109.
a.       The Expert Testimony
          Jack Hughey, Houston’s expert, testified that he appraised the property at
$3,552,000 as of January 1, 2000 and “approximately” $4,500,000 as of January 1,
2001. Hughey’s appraisal considered the market for sales and rental property, land
values, and income and expense statements from three other properties. He employed
the income approach for both years, and testified that this approach was more reliable
than the cost or market value approaches. Hughey considered the cost approach
unreliable because valuation of property should not be based upon what it cost to
construct, but upon the amount of income the property generates. He testified that the
market approach was flawed because property is unique, and that differences in size,
location, rent, and age require adjustments, which are matters of opinion.
          Chris Barzilla, the District’s expert, testified that he appraised the property at
$7,782,785 as of January 1, 2000. He considered the cost, income, and market
approaches to determining value in 2000. He concluded that the cost approach was
the most reliable approach, because the property did not have a history of income, as
it was newly constructed.


 
          Barzilla did look at comparable sales of other properties and at “performa
income” data. The sales information he reviewed came from the Harris County
Appraisal District’s sales book, which reflects buyers, sellers, sales prices, and
locations of properties. Barzilla testified that the sales comparison approach requires
that an appraiser collect sales data of comparable types of property, and adjust the
data for variables such as location, occupancy, age, condition, and size. Barzilla’s
review of the sale prices and rental rates of properties in competing markets
substantiated his opinion that the cost approach was not an erroneous method of
valuation.


 
          Barzilla appraised the property at $8,028,000 as of January 1, 2001. For 2001,
he was able to perform a more comprehensive evaluation with the cost and market
approaches. He appraised the property pursuant to the cost, income, and market
approaches, and arrived at three different values. Considering that the property was
not completely leased, Barzilla “put the most weight on the discounted cash flow.” 
He compared the value arrived at by employing the discounted cash flow analysis to
the values calculated by the cost and market approaches, and was satisfied with his
valuation approach for 2001.
          We conclude that the evidence is not so weak nor is the finding so against the
great weight and preponderance of the evidence that it is clearly wrong and unjust. 
Furthermore, we conclude that the there is more than a scintilla of evidence to support
the trial court’s market value determination of Houston’s property. The trial court’s
finding of market value was within the range of values supported by the evidence. 
Houston presented evidence that is inconsistent with the court’s finding, but the court
is vested with discretion to judge the credibility of the witnesses and the weight to be
given their testimony. Jones v. Tarrant Util. Co., 638 S.W.2d 862, 866 (Tex. 1982). 
The trier of fact may resolve conflicts and inconsistencies in the testimony of any one
witness as well as the conflicting testimony of different witnesses. See McGalliard
v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). See also Webb v. Jorns, 488 S.W.2d
407, 411 (Tex. 1972). We cannot substitute our judgment or opinion for that of the
finder of fact, even if there is conflicting evidence upon which a different conclusion
could be reached. Henderson v. Viesca, 922 S.W.2d 553, 563 (Tex. App.—San
Antonio 1986, writ denied). See also Moore v. Bank Midwest, N.A., 39 S.W.3d 395,
401 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (“The jury’s finding of fair
market value was within the range of values supported by the evidence, and it should
not be overturned.”). 
          We overrule appellant’s third issue.
D.      Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Adele Hedges
                                                             Justice

Panel consists of Justices Nuchia, Higley, and Hedges.